LEMMON, Justice.
We granted certiorari to review the trial court’s suppression of a controlled dangerous substance found by two policemen when they conducted a full search of defendant’s person after stopping his vehicle and arresting him for driving while intoxicated.
At the hearing on the motion to suppress, conducted 13 months after the offense, the two police officers were the only witnesses at the hearing.[1] Both Officer McClain and Officer Larkin testified that at about 1:00 a.m. defendant’s vehicle approached their patrol car on the wrong side of the road, forcing them to swerve to avoid an accident. They executed a U-turn and overtook defendant with red lights flashing and siren sounding. Defendant, who was alone in the automobile, was asked to step out and produce his driver’s license. When defendant did so, the officers noticed that defendant’s walk was uncoordinated, his speech was slurred, and his breath smelled strongly of alcohol.
McClain further testified that defendant was then advised that he was under arrest and was informed of his constitutional rights, after which McClain ordered him to place his hands on the car and to spread his feet. McClain stated that he then performed a search of defendant’s person, in which he discovered in one of defendant’s pockets what he described as a white envelope containing little white pills, suspected to be narcotics, and money.[2] According to McClain, defendant was then handcuffed and placed in the police vehicle to be transferred to headquarters for further testing for intoxication.
In describing the search on direct examination, the other policeman, Officer Larkin, stated “at that time he was in handcuffs”. *954 The prosecutor then asked Larkin if defendant was handcuffed before or after the pills were discovered, and the officer replied “I believe he was handcuffed before”. Asked a third time, Officer Larkin said that was the case “to the best of my knowledge”. On cross-examination, defense counsel harped on the time of the handcuffing, stressing in a comment to the trial judge the importance of the chronology.[3]
In argument to the trial court (and in brief to this court), defendant pointed out inconsistencies in the officers’ testimony.[4] Defendant argued that each officer claimed to have informed defendant of his rights and that one officer stated defendant was handcuffed after the search, while the second stated defendant was handcuffed before the search. The trial court granted the motion to suppress “on the basis of the uncertainty of the testimony”.
Neither “inconsistency” urged by defendant is of any significance. Both officers clearly established that they had probable cause to arrest defendant for driving while intoxicated, perhaps when they first stopped him and certainly when they observed defendant’s demeanor and detected the odor of alcohol. They imposed an actual physical restraint before the search by requiring him to spread his feet and place his hands on the car. See C.Cr.P. Art. 201.
Their testimony clearly established their intent to take defendant to the station to have the intoxication test administered.[5] Both officers also testified that they effectively took defendant into their custody immediately upon realizing that he was drunk.[6]
Thus, there was no question that the arrest preceded the search, whether or not the handcuffing did.[7] The search of the defendant’s person was therefore validly conducted as an incident to a lawful “full custody arrest”. See United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).
Accordingly, the judgment of the trial court is reversed, the motion to suppress is overruled, and the matter is remanded for further proceedings.

. Under C.Cr.P. Art. 703, defendant could have testified without having his testimony used to prove his guilt at his trial.

. Officer Larkin testified that Officer McClain discovered a plastic bag containing numerous white pills and an envelope containing broken pills and money. The arrest report indicated that the officers, during the search for weapons, first discovered a clear plastic baggie, which contained 25 white tablets and pieces of white pills, and later discovered a white envelope containing $135 in cash.

. Officer Larkin initially testified that defendant was advised of his rights and of the officers’ intent to arrest him as soon as the officers discovered that defendant was drunk. However, during cross-examination, defense counsel brought to Larkin’s attention the arrest report, which indicated that defendant was advised that he was under arrest after he was searched. Larkin then testified that defendant was not told that he was being arrested until after the search. Nevertheless, Larkin unequivocally stated that they intended to arrest defendant when they ordered him to place his hands on the top of the car.

. Because the hearing took place 13 months after the arrest, it is not surprising that the testimony of the two officers was inconsistent on some points.

. The officers testified that defendant either could not or would not blow up the device necessary to administer the IntoXilizer test.

. Once the policemen, who only narrowly avoided a head-on collision, discovered the intoxicated condition of the motorist (defendant), their only reasonable course of action was to effect a full custody arrest in order to protect others on the road and defendant himself from the danger posed by his drunken driving.
Therefore, unlike the facts of State v. Breaux, 329 So.2d 696 (La.1976), there was unequivocal and unrebutted evidence of the officers’ intent to effect a full custody arrest, and their actions reflected that intent. Significantly, there was no conflict in the officers’ testimony on this point, and their actions were perfectly consistent with that purpose.
Nothing in this record reasonably supports an inference that the officers acted without probable cause in arresting defendant or that they effected a full custody arrest as a pretext to justify the subsequent full search of defendant’s person. The uncontested facts did not even hint that defendant was merely stopped for a minor traffic infraction, for which officers would normally issue a traffic citation and allow the motorist to go on his way.

.This court on many occasions has observed that an arrest occurs when a person’s liberty is curtailed in a significant manner, rather than when the officer proclaims the words “you are under arrest”. State v. Coleman, 412 So.2d 532 (La.1982). See also Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).